FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 05, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ALEXIS V.,[1]

                    Plaintiff,

        v.

ANDREW M. SAUL, the Commissioner
of Social Security,

                    Defendant.

No.    4:20-CV-5010-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

        Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Alexis V. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions, 2) discounting Plaintiff's symptom reports, and 3) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 16 & 17.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 16, and denies the Commissioner's Motion for Summary Judgment, ECF No. 17.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of April 5, 2015.[18] Her claims were denied initially and upon reconsideration.[19] An administrative hearing was held before Administrative Law Judge Moira Ausems.[20]

In denying Plaintiff's disability claims, the ALJ made the following findings:

---

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 167-85 & 196-202. Her Title II claim was escalated to the hearing level and joined with the Title XVI claim. AR 17.

[19] AR 100-03 & 107-09.

[20] AR 35-72.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step one: Twenty-one-year-old Plaintiff had not engaged in substantial gainful activity since April 4, 2015, the alleged onset date, through her date last insured of September 30, 2018;

- Step two: Plaintiff had the following medically determinable severe impairments: specific learning disorder, unspecified anxiety disorder, and adjustment disorder with depressed mood;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

  > [Plaintiff] is limited [to] work that does not require the performance of more than simple routine tasks at a GED level of more [than] 1 or 2 from the Dictionary of Occupational Title (DOT), and would not be dependent on the ability to engage in verbal communication with the general public in a clear audible manner. In other words, she would not be able to perform a job that would require her to be on the phone, dealing with customer service, or dealing with irate customers. Further, [Plaintiff] would be limited to brief superficial interaction and verbal communication with the general public.

- Step four: Plaintiff had no past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

numbers in the national economy, such as laundry worker, kitchen helper, and auto detailer.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the reviewing opinions of John Gilbert, Ph.D. and Diane Fligstein, Ph.D.; and

- little weight to the examining opinion of Kris Marks, Ph.D. and the reviewing opinion of Holly Petaja, Ph.D.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

---

[21] AR 14-33.

[22] AR 25-26. The ALJ mistakenly referred to female Dr. Marks as a "he," and misspelled Dr. Petaja.

[23] AR 22-25.

[24] AR 1-9.

1

2

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

---

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

### A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff challenges the ALJ's assignment of little weight to the opinions of Dr. Marks and Dr. Petaja. The Court determines the ALJ erred because her weighing of these medical opinions is neither supported by substantial evidence nor meaningful explanation.

#### 1.    Standard

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[33] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both

---

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[33] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[34]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[35] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[36] may be rejected for specific and germane reasons supported by substantial evidence.[37] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[38]

    2.   <u>Kris Marks, Ph.D. and Holly Petaja, Ph.D.</u>

On June 25, 2015, Dr. Marks psychologically evaluated then-18-year-old Plaintiff and reviewed Plaintiff's records, including Plaintiff's individualized education program plans and a school reevaluation.[39] Dr. Marks diagnosed

---

[34] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[35] *Lester*, 81 F.3d at 830.

[36] *See* 20 C.F.R. § 404.1502.

[37] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[39] AR 313-17.

Plaintiff with a specific learning disorder with impairment in mathematics, reading, and written expression, listening comprehension deficits as either a learning disability or a communication disorder (moderate to severe), a speech sound disorder (mild), and unspecified anxiety disorder (moderate). Dr. Marks opined that Plaintiff was:

- moderately limited in her abilities to adapt to changes in a routine work setting, make simple work-related decisions, be aware of normal hazards and take appropriate precautions, and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and

- markedly limited in her abilities to understand, remember, and persist in tasks by following detailed instructions, learn new tasks, ask simple questions or request assistance, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and set realistic goals and plan independently.

Dr. Marks opined that Plaintiff's overall severity rating was marked.

In July 2015, Dr. Petaja agreed with Dr. Marks' assessed limitations.[40]

The ALJ gave little weight to Dr. Marks' and Dr. Petaja's opinions, namely the narrative opinions, because 1) the psychologists overly relied on Plaintiff's subjective complaints, which were not fully consistent with the objective medical

---

[40] AR 375-84.

evidence, and 2) the opined limitations were inconsistent with Plaintiff's ability to perform duties of cashier at McDonalds and Dollar Tree, albeit with some reported difficulties.[41]

As to the ALJ's first reason for discounting these opinions (that the psychologists overly relied on Plaintiff's subjective complaints, which were not fully consistent with the objective medical evidence), an ALJ is to consider whether an opinion is well-explained and consistent with and supported by the medical evidence.[42] Here, Dr. Marks' and Dr. Petaja's opinions were not based solely on Plaintiff's subjective complaints but also on school records related to Plaintiff's learning disorders and Dr. Marks' psychological examination, which included a clinical interview and a mental status examination. Dr. Marks relied on information obtained from each of these aspects of her evaluation, as is indicated in her symptom notes related to Plaintiff's learning disability:

> This is well documented in [Plaintiff's] available medical records. She received special education services from the time she was a preschooler until high school. She had continued speech and language and learning needs up through high school. [Plaintiff] has described having difficulties with understanding what she hears and with expressing herself. She continued to demonstrate a noticeable but

[41] AR 26.

[42] *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

slight speech impediment today. [Plaintiff's] inability to understand what is said to her as well as weak skills in reading, math and written language will likely continue to limit her employability. At this point, she can't seem to even make through an interview. She would need a fair amount of accommodations on any job, if she was hired. To date this has not been a successful endeavor however. Her learning disabilities are not likely to spontaneously correct and this is likely going to be a lifelong problem for her.[43]

Similarly, Dr. Marks' finding that Plaintiff's memory, fund of knowledge, and abstract thought were not within normal limits was based not merely on Plaintiff's self-reports but on Dr. Marks' review of the medical and education records, observations, and testing.[44] Based on simple testing, Dr. Marks found that Plaintiff's:

results suggest adequate short-term auditory memory but very poor long-term memory and extremely poor working memory. She cannot recall complex verbal directives although she can follow simple verbal directives especially if they are familiar activities such as writing her own name. Some of this may be due to poor listening comprehension.[45]

Likewise, Dr. Marks found that Plaintiff's extremely low abstract thought was "obviously affected by her poor auditory comprehension as well," commenting that Plaintiff needed to have questions repeated a few times.[46] During the testing,

---

[43] AR 315.

[44] AR 317.

[45] *Id.*

[46] *Id.*

Plaintiff showed "generally poor retention of verbal information."[47] For instance, when asked to write a simple sentence and draw three triangles, two squares, and a circle, she wrote "I love my daughter" and drew only a circle and a triangle. And when asked to write the current date and the date of Christmas last year, Plaintiff forgot to write the current date and wrote only the date of Christmas last year.[48] Plaintiff's observed cognitive challenges are consistent with her academic records. In 2014, Plaintiff performed poorly on the Wechsler Individual Achievement Test III: .1% for basic reading, 1% for reading comprehension, 7% for numerical operations, 3% for math reasoning, and 1% for written expression.[49]

Notwithstanding Dr. Marks' findings, the ALJ discounted Dr. Marks' opinion that Plaintiff would be somewhat distractible, make mistakes, and have difficulty finding a job. The ALJ discounted these opined limitations because they were based in part on Plaintiff's distractibility due to her anxiety. The ALJ found Dr. Marks' anxiety-related limitations were inconsistent with the medical records wherein Plaintiff rarely exhibited anxiety symptoms, but instead exhibited a normal mood, affect, and behavior. Yet, the medical records cited by the ALJ solely

---

[47] *Id.*

[48] *Id.*

[49] AR 280.

pertain to medical visits for physical-health conditions.[50] On this record, which documents severe cognitive disorders, the ALJ did not meaningfully explain why Plaintiff's normal mental status examinations during these relatively short duration medical visits for physical-health conditions were a legitimate reason to discount Dr. Marks' opinion pertaining to Plaintiff's anxiety, which was primarily based on her learning/comprehension struggles.[51] For instance, Plaintiff's learning/comprehension-related anxiety was discussed in the 2014 high-school reevaluation, wherein Plaintiff was very emotional and depressed as a result of her

---

[50] AR 26 (citing AR 408 (postpartum appointment); AR 417 (cold symptoms); AR 424 (urinary symptoms); AR 444 (cold symptoms); AR 454, 457, & 481 (feminine care); AR 462 (facial swelling); & AR 466 (upper respiratory infection).

[51] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (requiring that the ALJ reject an opinion for a reason that is responsive to the basis for the opined limitation); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the Court to meaningfully review the ALJ's finding); *Blakes v. Barnhart,* 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

academic testing.[52] And Plaintiff testified that her learning/comprehension

disorders negatively impacted her ability to perform part-time work at McDonalds

and Dollar Tree as she would make mistakes due to her learning/comprehension

difficulties.[53]

Moreover, the medical records related to Plaintiff's mental-health care and

cognitive abilities indicate:

- "She has possible hearing impairment. Affect was broad. The patient

  appeared calm. The patient was orientated x2. She recalled 3 out of 3

  unrelated words immediately and after 5 minutes. . . . She has a possible

  learning disability and had difficulties with math section of the MSE."[54]

- "She was able to score 1/9 points for answering basic questions about the

  short paragraphs she heard. . . . [Plaintiff] presents with significant

---

[52] AR 333 ("Current intelligence testing was proposed, but it was cancelled due to

[Plaintiff's] reaction to academic testing. [Plaintiff was very emotional, crying, and

feeling bad about herself at the conclusion of the WAIT-III testing. The testing,

again, put her academic struggles in the limelight."). *See also* AR 296 ("[Plaintiff] is

delayed in basic concept development (identification of familiar obj[ects] by use &

big/little) & her language skills interfere with her ability to respond to some test

items. Her perceptual discrimination skills also reflect a delay.").

[53] AR 52-56.

[54] AR 353.

delayed skills in speech and language as characterized by immature speech patterns compared to age-matched peers as well as difficulty understanding verbal and written information."[55]

- "Her appearance was slightly disheveled. . . Her attitude was reserved, anxious, and worried. . . Her affect was sad, down, anxious. She was tearful throughout most of the evaluation. Her speech was slightly pressured, fearful. Her thought processes were anxious, overwhelming, disorganized."[56]

- "Her hair was unkempt. . . Speech was hal[t]ing at times and she struggles to identify words several times. Rhythm and rate are regular. Behavior is fidgety and she pauses to scratch and sniff often. Affect is labile. Mood alternates between normal and tearful . . . Insight and judgment are poor."[57]

Plaintiff's academic and mental-health records reflect that Plaintiff's cognitive disorders caused and/or compounded her anxiety and depression. On this record, Dr. Marks' and Dr. Petaja's opinions that Plaintiff's ability to sustain full-time work was markedly limited cannot be discounted as being overly reliant on

---

[55] AR 431.

[56] AR 392.

[57] AR 390.

Plaintiff's self-reports without a more meaningful explanation supported by substantial evidence.[58]

The Commissioner argues that, because such checked-box opinions were vague, the ALJ need not have explained why she discounted Dr. Marks' checked-box marked limitations, i.e., that Plaintiff was markedly limited in her abilities to understand, remember, and persist in tasks by following detailed instructions, learn new tasks, ask simple questions or request assistance, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and set realistic goals and plan independently. But these checked-box marked limitations must be considered in the context of Dr. Marks' (and Dr. Petaja's) entire report. When read in their full context with Dr. Marks' observations and noted findings, these checked-box opinions are not vague.

---

[58] *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry."); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (recognizing that psychological opinions are generally based on self-reports, clinical observations, and mental examinations, and that an ALJ must explain why an opinion was based more heavily on self-reports than the provider's observations, diagnoses, and prescriptions).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Second, the ALJ discounted Dr. Marks' and Dr. Petaja's opinions because they were inconsistent with Plaintiff's ability to perform (with some reported difficulties) the duties of cashier on a part-time basis at McDonalds and Dollar Tree.[59] An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity, including part-time work because working with an impairment can indicate an ability to sustain full-time work.[60] Here, following Dr. Marks' evaluation, Plaintiff worked part-time at McDonalds (six hours a day about four days a week ) and on a sporadic on-call, part-time (four hours a day) basis for Dollar Tree. The ALJ recognized that Plaintiff's earnings briefly rose above substantial gainful activity levels in the first quarter of 2018 ($3,900), but otherwise were below substantial-gainful-activity levels.[61] Plaintiff did not sustain either of these part-time jobs: ceasing her part-time work at McDonalds after her hiring, supportive supervisor left McDonalds and not getting any phone calls from Dollar Tree to resume her on-call position.[62] The ALJ fails to meaningfully explain

---

[59] AR 26.

[60] *Cf. Gatliff v. Comm'r Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999). *See also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

[61] AR 19-20.

[62] AR 50-54.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

how these part-time positions were inconsistent with Dr. Marks' and Dr. Petaja's opinions that Plaintiff is markedly limited in her ability to sustain full-time work on an ongoing, appropriate, and independent basis due to her cognitive disorders, which worsened her anxiety and depression, causing her to make more mistakes or to be distracted. On this record, which reflects Plaintiff's life-long cognitive disorders and anxiety-related reactions thereto, that Plaintiff was able to engage in part-time, unsustained work was not a legitimate basis supported by substantial evidence or meaningful explanation to discount Dr. Marks' and Dr. Petaja's opinions.

The ALJ's discounting of Dr. Marks' and Dr. Petaja's opinions was consequential. First, the ALJ discounted their opinions that Plaintiff would be markedly limited in her ability to sustain full-time employment due to her limitations. Second, the vocational expert testified that an individual who requires the support of a special supervisor to ensure she stays on task with simple, routine tasks would not be able to hold competitive employment.[63] Third, the RFC permits performing simple routine tasks at a GED level of 1 or 2 from the Dictionary of Occupational Title.[64] A GED level of 1 requires:

- Reasoning development (apply commonsense understanding to carry out simple one- or two-step instructions; and deal with standardized

---

[63] AR 70-71.

[64] AR 21.

situations with occasional or no variables in or from these situations encountered on the job);

- Mathematical development (add and subtract two-digit numbers; multiply and divide 10s and 100s by 2, 3, 4, and 5; perform the four basic arithmetic operations with coins as part of a dollar; perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound); and

- Language development (recognize meaning of 2,500 (two- or three-syllable) words; read at rate of 95-120 words per minute; compare similarities and differences between words and between series of numbers; print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses; speak simple sentences, using normal word order, and present and past tenses).

Based on Dr. Marks' observation that Plaintiff had difficulties with math problems and with following simple instructions, along with Plaintiff's documented learning disorders at school, substantial evidence is lacking to support the RFC. The ALJ failed to explain how Dr. Marks' finding that Plaintiff could "follow simple verbal directives especially if they are familiar activities such as writing her own name" supported a finding that Plaintiff could perform work requiring a GED level

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

of 1 or 2.[65] Each of the three identified available jobs (laundry worker, kitchen helper, and auto detailer) were an SVP-2 with the following GED reasoning, math, and language levels: 1, 2, and 1 (laundry worker), and 2, 1, and 1 (kitchen helper and auto detailer), respectively.[66] The ALJ must more meaningfully explain what substantial evidence supports the finding that Plaintiff can sustain the identified SVP-2 jobs with these GED levels.

**B.      Other Steps: The ALJ must reevaluate.**

Plaintiff argues the ALJ also misweighed Plaintiff's symptom reports and erred at step five. Because the ALJ's weighing of Plaintiff's symptom reports and the RFC were based on an erroneous weighing of the medical evidence, the ALJ on remand is to reassess Plaintiff's symptom reports and proceed with a new step-five analysis. When reassessing Plaintiff's symptom reports, the ALJ is to consider whether Plaintiff's decision to decline psychiatric medication and speech therapy is a legitimate basis to discount Plaintiff's symptom reports if there is no evidence indicating that her psychiatric symptoms would improve with such treatment or

---

[65] AR 317. *See Wilson v. Colvin*, No. 16-cv-1971-WHO, 2017 WL 1861839 at *3-4 (N.D. Cal. May 9, 2017) (discussing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015), and subsequent cases distinguishing between a limitation to one-and-two step instructions with the ability to perform simple, repetitive tasks).

[66] AR 27 & 69-70.

that her limitations are correlated to her speech difficulties.[67] Moreover, the ALJ must be mindful that a claimant can arrange daily living activities, including child care, to accommodate limitations resulting from symptoms, but that full-time work may not similarly accommodate such limitations.[68] To discount Plaintiff's symptom reports on the basis of child-care activities, the ALJ must more meaningfully explain how Plaintiff's care for her children is consistent with the ability to sustain full-time work.[69]

## C.    Remand for Further Proceedings

As explained above, the ALJ's decision is not supported by substantial evidence. Plaintiff submits a remand for payment of benefits is therefore warranted.

The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."[70] When the court reverses an

---

[67] SSR 82-59.

[68] *See Molina*, 674 F.3d at 1112-13.

[69] *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("[T]he mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations.").

[70] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[71]

The Court finds that further development is necessary for a proper disability determination. Consistent with Dr. Petaja's suggestion,[72] on remand the ALJ is to order that Plaintiff participate in a Wechsler Adult Intelligence Scale test (or other cognitive intelligence test). The ALJ shall then reevaluate each of the medical opinions, consider any additional evidence presented, and make findings at each of the five steps of the sequential evaluation process.

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of

---

[71] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

[72] AR 375.

Social Security for further proceedings consistent with this

recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

provide copies to all counsel.

**DATED** this 5th  day of October 2020.


       s/Edward F. Shea

       EDWARD F. SHEA
      Senior United States District Judge